### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

**BILLY JONES,**

　　　　**Plaintiff,**

**vs.**                                                      **No. 1:13-cv-00741 RB/WPL**

**ESPAÑOLA MUNICIPAL SCHOOL
DISTRICT, JANETTE ARCHULETA and
MARTHA FERNANDEZ,**

　　　　**Defendants,**

**Consolidated with,**

**BILLY JONES,**

　　　　**Plaintiff,**

**vs.**                                                      **No. 1:13-cv-1250 RB/WPL**

**CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,**

　　　　**Defendant.**

### <u>MEMORANDUM OPINION AND ORDER</u>

　　　　This matter is before the Court on Defendant Children, Youth and Families Department's ("CYFD's") Motion to Dismiss Pursuant to Rule 12(b)(6). (13cv1250, Doc. 8). Plaintiff opposes this motion. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court **GRANTS** this motion.

**I.**　　**Background**

　　　　On August 9, 2013, Plaintiff filed suit in this Court seeking recovery under 42 U.S.C. § 1983 against Española Municipal School District, Maxine Abeyta, and Martha Fernandez.

(13cv0741, Doc. 1). On October 30, 2013, Plaintiff filed an Amended Complaint naming the Española Municipal School District and Superintendent Janette Archuleta (collectively "School Defendants"), as well as Martha Fernandez, a CYFD Juvenile Probation Officer, as Defendants. (13cv0741, Doc. 5). Therein, Plaintiff alleged (1) unlawful arrest in violation of the First, Fourth, and Fourteenth Amendments against Defendant Fernandez; (2) retaliation in violation of the First Amendment against School Defendants; (3) denial of Equal Protection in violation of the Fourteenth Amendment against all Defendants; (4) denial of due process in violation of the Fourteenth Amendment against School Defendants; and (5) violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") against Española Municipal School District. (*Id*.)

On October 30, 2013, Plaintiff filed suit against CYFD for violation of Title II of the ADA in the First Judicial District Court of the State of New Mexico. (13cv1250, Doc. 1-1). Plaintiff alleged CYFD violated Title II of the ADA by denying him the benefits of services, programs, and activities, including the benefits of: (1) encounters with officers properly trained to deal with citizens who are mentally impaired; (2) participation in mental health treatment without being arrested and charged with a crime; and (3) dignified treatment by the government entity sworn to protect its community's citizens. (*Id.*) CYFD removed the matter to this Court on December 31, 2013. (*Id*.) On March 25, 2014, this Court granted CYFD's motion to consolidate 13cv0741 with 13cv1250. (Doc. 32). CYFD moves to dismiss for failure to state a claim under the ADA. Plaintiff opposes.

## II.    Standard

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when the plaintiff has failed to state a claim for which relief can be granted. Under the Rule 12(b)(6)

2

standard, the court must take all well-pleaded facts as true for purposes of analyzing the motion to dismiss. *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012). To survive a motion to dismiss, a plaintiff must plead enough facts to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When applying this standard, the Court must resolve any factual disputes in the plaintiff's favor. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

**III.    Factual Allegations**

Plaintiff alleges as follows. On January 22, 2010, Plaintiff was a minor student at Española Valley High School in Española, New Mexico when another student, K.A., punched Plaintiff in the face and head and broke Plaintiff's glasses. (Compl., Doc. 1-1). Plaintiff suffered facial lacerations and swelling as well as multiple bumps on his head. (*Id.*) Española City Police Officer Ernie Romero was dispatched to the school to write a report. (*Id.*) Officer Romero contacted JPO Fernandez to seek the criminal prosecution of K.A. (*Id.*) K.A. is the son of Maxine Abeyta, who is the principal of Española Middle School. (*Id.*) K.A. was not expelled from school. (*Id.*) As a result of the beating, Plaintiff suffered from a mental/emotional disorder and post-traumatic stress disorder ("PTSD"). (*Id.*) These disorders rendered Plaintiff a qualified individual with a disability within the meaning of the ADA. (*Id.*)

On September 7, 2010, DeVanna Ortega, an assistant principal at the school, called for school security guard Christopher Archuleta to escort Plaintiff to her office. (Doc. 1-1). Española City Police Officers Christian Lopez and Danny Pacheco searched Plaintiff's backpack and

found drawings and a "List for Hell" containing the following: "1. Pink Whore; 2. Special Blonde; 3. Fat Ass; 4. Chris D; 5. Chriss [sic]; and 6. Austin." (*Id.*) The drawings were storyboards for a horror movie and the list was movie characters. (*Id.*) Plaintiff's therapist had suggested that it would be therapeutic for Plaintiff to draw pictures to express his fear of being bullied by students. (*Id.*)

During questioning by the officers, Dr. Lloyd Vigil, a school psychologist, determined that Plaintiff needed a psychiatric evaluation to determine whether Plaintiff was a threat to himself. (Doc. 1-1). Plaintiff was transported to St. Vincent's Treatment Center for a psychiatric evaluation. (*Id.*) Officers disclosed this fact to the media in violation of Plaintiff's right to privacy. (*Id.*) Roberta Goodman, a clinician at St. Vincent's, assessed Plaintiff and determined he was not a threat to himself or others. (*Id.*) That evening, St. Vincent's staff discharged Plaintiff into the care of his mother. (*Id.*)

On September 8, 2010, Officer Pacheco falsely reported to Officer Lopez that Plaintiff had "escaped" from St. Vincent's Treatment Center. (Doc. 1-1). Officer Lopez then falsely reported to Alexandra Rosas, the high school security officer, that Plaintiff "had escaped from the psychiatric unit that he was committed [sic]." (*Id.*) Ms. Rosas passed this information along to the high school principal and Ms. Ortega. (*Id.*) As a result, the high school instituted a lockdown. (*Id.*) During the lockdown, students were confined to their classrooms, all entrances to the school were closed, and Española police officers and school security guards conducted a classroom-by-classroom search. (*Id.*) No weapons were found during the search. (*Id.*) The police had no evidence that Plaintiff planned to bring a weapon to school or that Plaintiff had escaped from a mental hospital. (*Id.*) Nonetheless, Officer Pacheco's false information was divulged to the press and multiple news stories were printed using Plaintiff's name and quoting Officer

Lopez as saying he "believe[d] the boy, who moved to the area from Georgia about two years ago, had been picked on or bullied at school and that he's suffering from mental health problems." (*Id.*)

On the same day, September 8, 2010, JPO Fernandez authorized the arrest of Plaintiff because she was concerned that Plaintiff was not receiving necessary psychological counseling. (Doc. 1-1). JPO Fernandez knowingly overcharged Plaintiff with attempted murder and aggravated assault in order to make sure Plaintiff was taken into custody and not merely summoned into the probation office. (*Id.*) On September 9, 2010, Plaintiff was arrested during a psychological counseling session. (*Id.*) Plaintiff was handcuffed, transported to the Santa Fe Detention Center, and detained. (*Id.*)

## IV.    Discussion

The sole claim against CYFD is brought under Title II of the ADA, which states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA defines the term "qualified individual with a disability," as "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "The term disability means a physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(2)(A).

The Tenth Circuit has explained that, in order to state a claim under Title II of the ADA, a plaintiff must prove that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs,

activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright,* 186 F.3d 1216, 1219 (10th Cir. 1999). It bears underscoring that "[t]he first element of a discrimination claim under the ADA is proof that the plaintiff has a qualifying 'disability' under the statute." *Kellogg v. Energy Safety Servs. Inc.,* 544 F.3d 1121, 1124 (10th Cir. 2008). Merely having an impairment does not make one disabled for purposes of the ADA. *See Steele v. Thiokol Corp.,* 241 F.3d 1248, 1252 (10th Cir. 2001) ("the ADA demands that we examine exactly how [plaintiff's] major life activities are limited by his impairment."). Rather, to constitute a disability, the impairment must substantially limit one or more of the individual's major life activities. *Id.*

In this case, Plaintiff has not pled that he is "disabled" as that term is defined by the ADA. Plaintiff has not alleged that he is substantially limited in any of his major life activities. Indeed, outside of stating that he suffers from a mental/emotional disorder and PTSD, Plaintiff has alleged no facts as to whether and how his impairments impacted any major life activity. Similarly, the Complaint provides no facts to support a plausible claim that plaintiff suffered discrimination on the basis of a disability. This is inadequate. *See Gee v. Pacheco,* 627 F.3d 1178, 1195 (10th Cir. 2010)(holding that conclusory allegations of discrimination fail to state a claim for relief). Plaintiff's allegations are insufficient under *Iqbal* and *Twombly* as they merely offer a formulaic recitation that he is disabled without any factual enhancement. In that Plaintiff has failed to substantiate the first element of an ADA claim by failing to allege he is disabled as defined by the ADA, Plaintiff has failed to state a claim under the ADA.

In addition, CYFD argues that the ADA is inapplicable because an arrest is not the type of "service, program or activity from which a disabled person could be excluded or otherwise

denied a benefit. In *Gohier v. Enright,* the Tenth Circuit held that a person with a disability can state a claim under the ADA based on police conduct in an arrest or investigation." *Gohier,* 186 F.3d at 1220-21. In *Gohier,* the Tenth Circuit discussed two potentially viable theories involving police conduct recognized by other federal courts: the wrongful arrest theory and the reasonable accommodation theory. Under the wrongful arrest theory, law enforcement may be liable for arresting an individual after incorrectly perceiving the effects of the individual's disability as illegal conduct. *Id.* (citing *Lewis v. Truitt,* 960 F. Supp. 175, 178 (S.D.Ind. 1997) and *Jackson v. Town of Sanford,* 1994 WL 589617, at *6 (D.Me. Sept. 23, 1994)). Under the reasonable accommodation theory, law enforcement may be liable if they fail to reasonably accommodate a person with a disability during the course of an investigation or arrest for a crime unrelated to that disability, thereby "causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* (citing *Gorman v. Bartch,* 152 F.3d 907, 912-13 (8th Cir. 1998)). However, while the Tenth Court clarified in *Gohier* that "a broad rule categorically excluding arrests from the scope of Title II . . . is not the law," the court stated that it remained "an open question in this circuit whether to adopt either or both [theories]." *Id.*

There is no need to resolve this issue herein because Plaintiff has failed to state a plausible claim under either theory. For the wrongful arrest theory to apply, the conduct that is mistaken for criminal activity must actually be lawful. Thus, the theory applied to a case where a stroke victim was arrested for driving under the influence, even though he had actually been driving sober, *see Jackson,* 1994 WL at *6, and to a case where a deaf man was charged with resisting arrest, when in fact he simply could not hear the officers' orders, *see Lewis,* 960 F. Supp. at 178. By comparison, the Tenth Circuit concluded that the theory did not apply when a schizophrenic man physically threatened a police officer because the behavior was an unlawful

assault. *See Gohier,* 186 F.3d at 1221. Notably, the wrongful arrest theory focuses on the circumstances known to the officer at the time an arrest is made, and how police responded. *Compare Lewis,* 960 F.Supp. at 176-77 (deciding that the plaintiff's arrest for resisting law enforcement was unwarranted because officers knew he was deaf), *with Gohier,* 186 F.3d at 1222 (concluding that the officer's use of force in self-defense was warranted given the plaintiff's threatening conduct). The question is not whether the police were ultimately correct in assessing the legality of the plaintiff's conduct, but whether that assessment was reasonable. *See Gohier,* 186 F.3d at 1222 (holding that the when the officer shot the schizophrenic plaintiff, the officer reasonably thought it was necessary to avoid serious harm).

In this case, Plaintiff has alleged that Defendant Fernandez knew Plaintiff had made potential threats to fellow students. The wrongful arrest theory is inapplicable because Plaintiff has not alleged the conduct that was mistaken for criminal activity was actually lawful. *See Hainze v. Richards,* 207 F.3d 795, 801 (5th Cir. 2000) ("While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public."). Based on the facts alleged in the Complaint, it was reasonable for Defendant Fernandez to believe that Plaintiff presented a threat to other students. Therefore, the wrongful arrest theory is inapplicable and Plaintiff has failed to state a plausible ADA claim.

Similarly, the wrongful accommodation theory is inapplicable. As grounds for his assertion of the reasonable accommodation theory, Plaintiff contends that by arresting him while he sought psychological treatment, the police officers caused him to suffer greater indignity than other arrestees. (Doc. 11). However, the Complaint contains no allegation that that Defendant

Fernandez effectuated the arrest. Accordingly, Plaintiff has failed to allege a plausible ADA claim against Defendant Fernandez.

Finally, CYFD asserted in its motion that the ADA claim is barred by the applicable statute of limitations. (Doc. 8). Plaintiff responded that the statute of limitations was tolled while Plaintiff was a minor and Plaintiff did not discover the role played by Defendant Fernandez until November 9, 2012. (Doc. 11). In reply, CYFD withdrew its arguments concerning the statute of limitations. (Doc. 15). The Court declines to address this argument as it has been withdrawn.

**THEREFORE,**

**IT IS ORDERED** that Defendant CYFD's Motion to Dismiss Pursuant to Rule 12(b)(6) is **GRANTED.**

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**